We'll now go to our next appeal, which was the first on the published schedule. That is Appeal No. 24-1427, Hedgepeth v. Britton and others. May it please the Court, good morning. Paul Orfanides on behalf of Plaintiff Appellant Jeanne Hedgepeth, who is with me in the courtroom this morning, as is my co-counsel Christine Svensson. We are here on the grant of summary judgment on Plaintiff's Section 1983 claim for a violation of her First Amendment rights. Plaintiff was a tenured teacher with 20-plus years of experience at Palatine High School in Palatine, Illinois. She was terminated for comments she posted on her private Facebook page following the unprecedented looting, rioting, and violence in Chicago and across the country in the aftermath of George Floyd's death in late May of 2020. Her comments were neither at work nor about work, but instead addressed important current events. She posted them while vacationing in Florida after the school year has ended. If speech under those conditions can provide the basis for termination, then teachers effectively have no free speech rights left. She posted this on Facebook, and as I understand, this was on a personal account and in a closed circuit. I'm not very familiar with Facebook, judges don't use it, but in other words, she had to admit people into this circle, is that right? Yes. Only people that she designated as her friends could view her private Facebook post. So it's fair to say, from your perspective at least, that she took steps to make this private to limit the circle. Yes, absolutely. And apparently her testimony at least is that she did not permit current students to enter that circle. Is that correct?  She would not accept friend requests from current students. She would not ask current students to be Facebook friends. I don't believe she would ask former students to be Facebook friends, but she would accept Facebook friend requests from former students. I see. Thank you. So it was a fairly small universe of people that would have access just to her Facebook post. But how many friends did she have? Does the record show? There was some different testimony, I think there was maybe 800 Facebook friends in total, a mix of former students. She does not dispute that some former students were Facebook friends, but with 20 years of experience teaching, some of these people are going to be 38, 40 years old, they're going to be adults at that point. To describe them as part of a community or that, you know, communicating with Facebook friends somehow influences the district is, I think, is a stretch. How large a district is this? I think there's about 250,000 people served in the districts. I think they have five high schools and then two specialty high schools. I see. And the school to which she was assigned, how many students? I believe approximately 2,800 students and 180 teachers. So senior high school. Senior high school. It's a very, very large high school in the Chicago area. Counselor getting back to the Facebook friends and the makeup, I believe I saw in the record that approximately 80% of her Facebook friends were former students. Is that is that accurate? I believe there was some some testimony to that effect. There was also I mean, it was there was no clear delineation of the number of people who were Facebook friends who were former students as opposed to non-former students. But again, with 20 years of experience, you're going to have a lot of people, a lot of adults, people who are all around the country who are who end up being your Facebook friends. We we raised three broad categories of issues that we take with the district court's decision. The first concern, the issue preclusion finding. Under no stretch can I would I have ever anticipated that the employer's decision on the merits of this case would be credited as a final judgment on the merits equivalent to that of a court of law. Nowhere in our system of justice does a defendant get to be the judge of in his or her own case. The judges, the defendants, they were the complainants. They were the prosecutors. They were the witnesses. And if the district court's decision is to be upheld, they were also the judges. That cannot be the law. The only proper way to look at that, the only way that makes any sense is to say they were acting as an employer, not as a court of law. There was a hearing, but the statutory scheme set up by the Illinois legislature is very, very different. This is not some. At least at the intermediate appellate level, though, the Illinois courts seem to have accepted the board as a acting in a judicial capacity with these cases, isn't that right? I don't believe so, Your Honor. In fact, I know that the Illinois appellate courts have described the school board as being an inherently interested party. I know it has done that, and you mentioned that in your brief, but they've also certainly dealt with them as a judicial body. I have not seen any case, and the defendants did not cite any case, in which a court held that a school board was acting in a judicial capacity. I said dealt with them as, in other words, decided cases under their, I think it's a certiorari procedure, is that right, in Illinois, is that what you call it? When a court reviews an administrative agency. I don't, I'm not familiar with the correct term that would govern that type of petition, but I'm not aware of any case in which an Illinois court has said, under the current regime, because the statute changed in 2011, before 2011, the decision would go, or the process would go from the school district to the Illinois State Board of Education, the Illinois State Board of Education would make a final determination. That was then appealable to the court of, to the Illinois judicial system. That's sort of the classic administrative review. There was some discussion of the Illinois Human Rights Commission. That's the position that, that's the process that follows. The Goodwin case that, from the Seventh Circuit, that the parties have cited, involves University of Illinois. In that instance, if a complaint or an issue, an employment issue, is being decided, that goes from the university to the Illinois University Services System, which is a state agency. That, that does, that can hold a hearing. That hearing, the results of that then are reviewed by a merits board. That merits board can then, that decision can go to the court of appeals. But that's very, very different. It never goes back to the employer. Why didn't your client do the administrative review appeal to the circuit courts? Because she could have if she was concerned about sort of these self-dealing kind of issues. That was not done. She could have. But at the same time, we'd had, we'd been litigating for 13 months at federal court. Discovery had closed. We were setting briefing schedules for summary judgment. What's the point of going back? Well, I'm concerned about federalism because then what's the point of the state process if, if you don't like what happens there, you can just run to federal court, right? Because, because preclusion, there's efficiency and federalism concerns embedded in that doctrine. So, so. But we didn't run to federal court. We were in federal court when the decision was made. And, and, and. And we've been in federal court. We filed in July of 2014. I understand. But there was a decision to, to litigate the First Amendment claim in the state proceeding, correct? That was a strategic decision. First Amendment claims were raised at the ISBE hearing and, and the school board ended up being the judge of those First Amendment claims. And we think that is fundamentally wrong. And even if you were. I think, I think the point that Judge Maldonado, I think, is it, well, it's that she, she made a choice at the, at the outset of this, okay? And the choice that was made before any, before litigation gets going, was to seek a hearing, right? Yes. Okay. She's not compelled by Illinois law to seek an administrative hearing reviewing the recommended termination of the board, correct? Right. Okay. But when she made that choice, what she did is she set in process, administrative wheels started to turn, the ones that, that you've been talking about. She could have made a different choice, and that was not to ask for a hearing after the board recommended termination, but instead to go to federal court with a Section 1983 lawsuit. Yes. Okay. So at least the, the question to, to my mind is, could she have, when she, when she did choose to come into federal court with a 1983 action, could she have withdrawn her request for any administrative resolution of her challenge to the board's termination recommendation? I don't know the answer to that. I'm not familiar enough with that process. She did. It seems odd that an employee that chooses, that, that chooses to set an administrative process in motion cannot, cannot then stop those wheels from turning by just saying, I'm delay, change of heart, whatever, preserve the resources on the administrative side. I'm making a choice to pursue a remedy in a judicial forum. At that point, she had been fired, or she had been suspended without pay for a year. There was no end in sight to the administrative hearing. The administrative hearing officer. Right. So that explains why she went to federal court. Well, the, and the administrative hearing officer had missed her statutory deadlines for issuing her non-binding findings and report. Right. So my reaction to that is, why not say, to heck with the administrative process. I'm frustrated with it. It's not working. I'm giving up on it. I'm going into federal court. Forget the administrative stuff. And could she have, I don't know if she could have done something to pull back that. I don't, I don't know that it would have mattered. Does it matter legally? Because what ended up happening, where there were two parallel paths, you had federal court litigation, you had administrative litigation over the same issue. I don't think it matters. And I don't think it matters for two reasons. First of all, the Illinois legislature and the legislature process does not bind this court in its, or limit its court in its authority about whether to grant preclusive effect to what the school board did here. So what you're, what you're doing with that is you're just saying, you're returning to your point that it's just structurally, it's structurally conflicted. It's structurally unfair. That's correct. That's right. It's structurally unfair to have the defendants, especially in this instance when the defendants had testified in their defense. They participated in discovery. We'd had 13 months of discovery. We'd had defenses. You know, they could have sought a stay if they were concerned about the administrative hearing. They could have sought a stay of the federal court action, or at least raised the issue. They could have filed their affirmative defense saying this is wrong. I mean, it's an affirmative defense, it's not jurisdictional. It was waived. They acquiesced to the federal court litigation. And that, that is a defense to this sort of, this raised, or issue preclusion assertion. So there was no reason why, I mean, they haven't offered a reason why they chose to litigate this case for 13 months in federal court, participate in discovery, but it is where we are. And the fundamental truth of the fact is, is that we had defendants who had testified and been deposed on their decision, who had a pecuniary interest in the outcome. They were biased. They were anything but neutral. And yet, their decision is being credited as the effect of a judicial determination. If they were the judges in this case, they should have recused themselves. I don't know what would have happened in that circumstance. But I mean, it's fundamentally unfair for the defendants in a case in federal court to say I've decided the merits of this case, and this court has to be bound by that. Yeah. And that, as a factual matter, you're talking about three of the seven board members, correct? Because the board, this ended up playing out over quite a period of time, right? The board changed. That's right. But it was the majority of those who voted to adopt the non-binding findings and recommendation of the administrative law of the Illinois State Bar Examiner Hearing Examiner. Okay. You want to save some rebuttal time? I would. Okay. Hopefully, we can talk about the first amendment a bit. But yes. Okay. Very well. Okay. Ms. Golds, good morning. Good morning, Your Honors. May it please the court. Haley Golds on behalf of Defendants Board of Education of Township High School District 211, Dr. Lisa Small, Dr. James Britton, Kimberly Cavill, Anna Klimkiewicz, Robert Lefebvre Jr., Stephen Rosenblum, and Edward Young. Your Honor, we are asking today for you to affirm the well-reasoned decision from the lower court affirming the defendant's motion for summary judgment for two reasons. First, the board's decision was final for the purposes of issue preclusion. And second, because the school district's interest in the efficient management of its schools outweighs the plaintiff appellant's interest in speech in this matter. So, turning first to the issue preclusion question, I do want to address the question of judge, jury, and executioner and the fact that the interest of judicial efficiency would be the most important issue preclusion in this case. The Seventh Circuit has addressed this previously in Rogers v. Desiderio in 1995, as well as in Garcia v. Village of Mount Prospect in 2004. In the Rogers case, the court said, this court deprecates the practice of filing two suits over one injury. Multiplication imposes needless costs on one's adversary, on the judicial system, and on other litigants who must endure a longer queue. Plaintiffs hope that more suits will improve their chances. They seek the better of the outcomes. To discourage the tactic, judges award plaintiffs not the better outcome, but the first outcome. Whichever suit goes to judgment first is dispositive, and the doctrine of claim preclusion, or in this case, issue preclusion, requires the other to dismiss the litigation. In this case, plaintiff appellant has chosen to file two lawsuits, and as Judge Easterbrook pointed out in Davis v. What do you mean by two lawsuits? There's a federal court 1983 action, right, which is coming to us, and then there were these administrative proceedings that occurred. What's the second lawsuit? That may have been imprecise language. The plaintiff appellant in this case has decided to challenge the board's decision to discharge her in two different judicial proceedings. The first being a challenge to the board's decision in front of a neutral hearing officer, and the second being the federal lawsuit. Your Honors, in this case, in order to determine whether or not issue preclusion applies, the court applies Illinois law that's pursuant to the U.S. Supreme Court's decision in University of Tennessee v. Elliott. In order to determine whether or not a decision is issue preclusive under state law, the court decision must have the same parties, it must involve the same issues, and it must have a final decision. In this case, there is no... Can I give you a hypothetical that would help tease the legal issue out a little bit? Sure. Suppose, hypothetically, this did not happen factually. I'm making it up, okay? That the board stated, we accept the recommendation of the hearing officer to terminate the plaintiff. Okay? We're accepting that, but we disagree with the hearing officer's reasons. Okay? And the board's reasons are these. There was actually no disruption that was caused by the Facebook posts. None whatsoever. Okay? But we've had it with the plaintiff's speech because we completely disagree with it. So you're... Then what? So you're... The hypothetical is they fired her explicitly because they disagree with her speech and there was no disruption. There was no disruption, right? Okay. And we've had it with her speech and, let's add, we also, we don't like her. We're tired of her. I mean, in a vacuum outside of any other context? So the legal... The reason I'm asking the hypothetical is because what I think you need to grapple with is does that get preclusive effect? So if I change the fact pattern and make it wildly different than the actual facts here, is your position still the same? As a legal matter, it's preclusive. Yes, because she could have challenged that decision to the Illinois court. She had that ability. Okay. So that's the key point in your view, that her... The reason that this is preclusive is because her outlet is to seek appellate review in a state court of the school board's decision making. Correct. Correct. That is why it's issue preclusive. I believe that there are other reasons that the First Amendment balancing weighs in favor of the school district, but in terms of the actual decision of the school board, if it's correct or incorrect, the fact that she did not seek review makes it final under Illinois law. The Supreme Court in REAW said that a decision is final once the opportunity for appellate review is exhausted. 35 days after the decision of the school board, appellate review is exhausted. What do you say to Mr. Orfaniti's point that it's an odd world where the board members, when they make an employment decision, are also 1983 defendants facing money judgments, individual personal money judgments in federal court. That makes them interested parties. It makes them biased, that this is set up in a way that is structurally problematic. What's the response to that? Certainly. Well, the existence of a problem of structure is a creature of plaintiff appellant's own making. In the first instance, she filed both suits, and she determined that she would file suit against the board members who she was also seeking a particular decision from. I would submit that that would be equal to suing a judge that's decided unfavorably for you, and then saying the judge needs to recuse themselves because of their preliminary opinion in your case. But there are other good reasons why. So is the practical answer to that, she should not have gone down the administrative road? She should have come into federal court under 1983 to begin with? I do. Is that what you're saying? Well, I'm not saying that she should have gone into federal court, or she should have sought administrative review in circuit court. But either way, she could have brought the claim to an entity outside of the board. For example? So had she decided or felt that there was bias, had she felt that the board had erroneously decided that she should be discharged, she could have appealed that decision to the circuit court in Illinois. She could have brought her First Amendment claim and said that the balancing of the hearing officer as adopted by the board was incorrect. She had the opportunity to challenge that decision. She also could have foregone that. I did want to address that, the answer to your question with respect to whether she could have withdrawn her administrative challenges. Yes, she could have. She could have withdrawn that and filed her complaint in federal court. The plaintiff in Craig in 2013 did just that. He didn't ask for administrative review of discrimination. I'm glad. Thank you for raising that. Is Craig an Illinois case or something? What is Craig? I'm sorry. Craig versus Rich Township 227. That's a Seventh Circuit case from 2013. That's a case where a guidance counselor at the school published a book called It's Not Her Fault, which contained a lot of sexual advice. Withdrew the administrative proceeding? No, he did not withdraw the administrative proceeding. He just never chose to go forward with it. He only submitted his claim in federal court. Oh, yeah. I think that part is clear. I think that there's nothing in Illinois law that I see that compels someone in the plaintiff's situation to go all the way through the administrative process. I don't see that anywhere. No. They can make a choice to go to federal court by invoking 1983. They can just say, to heck with the administrative stuff. I'm not doing it. Right. Okay. My question is different. My question is, once she has asked for the hearing with the hearing officer and all those wheels are turning, can she say, I'm frustrated with this whole process. It's taking a long time, et cetera. I would like to withdraw my request for a decision by the hearing officer. Why? Because I'm going to federal court in 1983. The answer to your question is yes. I don't have the actual statutory language in front of me, but the answer is yes. And that's in the statute? I'm not sure explicitly how it's laid out, but the answer is procedurally, yes, you can withdraw your challenge of the decision of the board under the school code. Okay. So, I do want to raise a couple of points with respect to bias that I haven't raised yet. Obviously, I said that the plaintiff created the bias by filing the lawsuit. I do want to point out that plaintiff appellant has not alleged that the hearing officer showed any bias or that there was any bias in the administrative proceeding. The school board, when it made its November 2022 order, when it discharged plaintiff, adopted the hearing officer's findings of fact and recommendation in their entirety. So, to the extent maybe if there had been, which we're not conceding, but if the defendants had in some way been biased against plaintiff appellant, there's nothing in their actual adoption of the findings of fact and recommendation that would indicate that that bias impacted their decision. Additionally, the Illinois Supreme Court, again, the body that determines what the law is with regards to issue preclusion, did in the case of Beggs v. Murphysboro, which is cited in plaintiff appellant's brief, raise the issue of whether or not board members could be considered neutral arbiters for the purposes of making an employment decision. They said that the board termination process is not partisan, that board members comprising the agency decision maker are assumed to be people of conscience and intellectual discipline capable of judging a particular controversy fairly on the basis of its own circumstances. So, it's something that the Illinois Supreme Court has considered in these cases and still found that the board's decision is final in that case for the purposes of administrative review, but also based on the case law for the purposes of federal 1983 claim. Ms. Goltz, can you go back to the question that Judge Maldonado asked the other side, and that was, am I right in remembering that the plaintiff herself estimated that about 80% of her friends on Facebook were former students? Yes, that is correct. Okay, and is there any ambiguity, those friends would not have included Superintendent Small, correct? I don't believe so. Or, what's the principal's name, Hanson? I believe it was Medina. Medina, yeah, okay. There's no question, though, that the posts made their way outside the circle of friends, correct? Correct. Within 24 hours, the district was getting complaints from members of the community about the posts. Okay, and what, by email, by phone? I believe by phone and by email. Okay. Is there any evidence in the record that the teacher's ability in the classroom or her current student's ability in the classroom to learn was in any way impaired by this? Well, evidence of that nature could not be in the record due to the fact that school was not in session. However, I would submit that under the Pickering analysis, you have to consider this in terms of the greater context. So, in this instance...  Why? Because the context is important to determine whether or not the speech would so... Well, let's talk about that for a minute. School boards are meant to resolve controversies of policy and of employment practices when they arise. That's their job. So, the fact that they had to confront this situation is just telling us they had to do their job. But they are dispute resolvers, as you put it in the global picture, right? Correct. So, to tell them they were irritated by having to look at this is kind of a... It doesn't tell us. All it does is tell them they had a human problem they had to solve. That's what boards do. If the issue was that the school board members were irritated for having to look at that, that would be one thing. In this circumstance, you have a teacher with two prior disciplinary issues involving an inability to deal with students in class now posting things on Facebook that are offensive in that they dismiss the opinions of a large majority of the student body and the community and also advocate, in some instances, violence and call for a civil war and... So, now you're telling me that it is content-based. To the extent that the content was not respectful of the viewpoints of others, yes, there is a certain element of the content being an important element of consideration. Was it any less respectful than what we hear from political candidates in this country? I think it depends on the political candidate, certainly, but I think if some of the current political candidates were teachers and posting what they post... Are we supposed to shield our students from the knowledge that our political debate in this country is raucous and that you have to deal with it in those terms? Under the Pickering factors, there's a higher standard for school teachers because of the government's interest in the efficient operation of its schools than there is for instance... See, and I'm trying to find out what really was the problem with the operation of the school. Sure. And the answer is that the school felt... I mean, among other things, but the most important answer is that the school felt that Plaintiff Appellant could no longer serve as a teacher, that her students would no longer be able to learn from her, given her history, disciplinarily, as well as the fact that she made Facebook posts that advocated for violent reactions and did not respect the opinions of others. She did that despite having had training on social media usage in 2019 and 2020, despite having discipline for reacting to political complaints in a volatile way in 2016, and she did that in a way that even her own expert witness, Dr. Swain, said rejected and criticized the opinions of individuals who are liberals. I would also like to point out that the disruption is not... As opposed to other Seventh Circuit precedent, the disruption in this case is significantly more palpable. It's so disruptive and has such an impact that the Plaintiff Appellant herself, when the article was published in the Daily Mail, an international publication, asked the Daily Mail to take it down because it was harmful to her reputation. So to the extent that she felt that articles being published that were harmful to her reputation should be taken down, I think the implication on the school district for keeping someone like that on staff when they're receiving hundreds of complaints, when students are saying they can no longer be in her class, and finding that... I'm sorry, when students say what? When students are saying that they can no longer effectively learn from her. Who said that and where? Your Honor, I don't have all of the comments in front of me, but I know that... Somebody said that and where, though? I mean, did students actually testify against her someplace? Yeah, students did submit emails. Students... I believe that there was a student submission to the school board in July of 2020. I'm not sure about the June 2020 board meeting, but I know that there was a submission from students in the July of 2020. Were there students the other way? I'm sorry? Did some students testify on her behalf? I am not certain of that off the top of my head. I know that some individuals did. I don't know if those individuals were students. I'm sure that some did. You'd expect that kind of controversy in the general polity. Well, given that her posts weren't advocating for one position, but instead suggesting that the other position was wrong and that people who held that position had been hoodwinked and were ignorant... Suppose she were a math teacher and the students said that they could not learn from her. Would that be grounds to... One or two students said that. Would that be grounds to fire? As I understand it, this teacher has quite a lot of positives in her educational record. She does have positives in her educational record, but she also has negatives in her educational record in that she was suspended in 2016 for an outburst in which she used the F word twice in which she said that students weren't going to be frigging deported now that Trump was president. In 2019, she got upset with a student who was challenging her and told him to do the fucking homework and also responded... Those were in-class situations, right?  But it indicates that there's a reason... And here we have a situation where she actually took steps to create a personal audience that did not include students. She did create a personal audience, but as pointed out, within 24 hours, her posts were everywhere. As I believe it's the Fourth Circuit and Liverman Peters said, social media platform amplifies the distribution of the speaker's message. It increases the potential in some cases exponentially for departmental disruption and thereby favors the employer's interest in efficiency in Pickering balancing. So the fact that it was posted on Facebook, even if it was just to her, quote unquote, 800 friends, 80% of whom were former students and who, despite being trained to the contrary, may or may not have had siblings in the school, she didn't bother to figure out whether or not she needed to unfriend certain individuals because they had siblings currently attending school. Suppose she had expressed on her Facebook page views on premarital sex? I think it would necessarily be a contextual question. Was she previously disciplined? Was she denigrating a former student's opinions and saying that that former student had been hoodwinked? Was she saying that people who engage in premarital sex should be sprayed with sewers or sewage? I think it's, you know, there are specific facts. So what you're telling me is teachers can express some views outside as long as they do it quietly or as long as they express moderate opinions? No, it has nothing to do with the moderation of the opinion. It has to do with the Pickering balancing. It has to do with the disruption that's caused in the school. It has to do with whether or not, based on the speech, the school has a belief that the individual can still serve in that position. I think we have your point, and I notice that we've gone over time. Thanks a lot. Thank you. Thanks, Ms. Goulds. Yeah, let's give you four minutes on rebuttal. That was quite a rhetorical flourish at the end there. So there was a lot to respond to. I think what it really does is highlights all the disputes of fact about how to interpret the posts. There was no one was advocating violence or civil war. That's just a false construct. I mean, but that's the nature of the dispute. That's why a jury needs to decide how these posts should properly be interpreted. I don't think she was disparaging anyone's comment or views. She was challenging the traditional notion or the traditional views on race in the United States, and she did so citing scholars. Thomas Sowell, she encouraged a young adult to read Thomas Sowell. That is somehow disparaging people's views? I don't think so. She cited accurate statistics. I mean, this is the fundamental dispute is how do you interpret these posts, and we think that a jury has to decide that issue. It's not something that can be decided by a court. What's her burden, in your view, on summary judgment with respect to coming back to the defendant, the district, not the individuals, the district on what the evidentiary record shows on disruption? The disruption, well, that's another interesting question because she, opposing counsel, said there were hundreds of communications. There were hundreds. We disputed. There was a lot of double counting, triple counting, quadruple counting at some point. Emails were forwarded between school board members, and they were counted twice. That's all fair, but what I had in mind in the prior colloquy was in paragraph 45 of the summary judgment submission, the plaintiff's response to your statement of undisputed facts. There, on the disruption point, your client made, set forth as a factual matter, the principal, Tony Medina, heard from many people, or not your client, I'm sorry, many people, including multiple school staff and then current students who wanted to speak over Zoom and in person to discuss the posts, et cetera, where the concern being raised was how interrupted the teachers and students were by the posts. So what's your client's obligation in summary judgment with respect to that evidence? I mean, I know what you're saying is you should go to a jury, but there's no, under Rule 56, there's no obligation to conform with evidence? First of all, we objected to some of that testimony, and the district court sustained that objection. It found, with respect to complaints by teachers or concerns raised by teachers, that there was no evidence in the record that supported that assertion. Defendants, they didn't address that. They haven't responded to that in any way in this appeal. Sustained it where, in the summary judgment ruling? Because there's no trial or anything. Well, I always object to evidence in summary judgment because it's a good practice. If you practice in California at all, they do it all the time, and it teaches you. It's a good thing to try. All right, well, I don't mean to sidetrack you on that. Go ahead. I believe it's in a, we cited it in our brief. And the other issue is that I wanted to raise with respect to this alleged disruption. You know, there's a line between what is a heckler's veto and what is proper consideration. You know, Craig, Mel, out of the Seventh Circuit, Melzer, out of the Second Circuit, make that distinction between members of the public and parents and students. The overwhelming majority of the people that were complaining or contacting, communicating with the district were outsiders. They purported to be members of the community. We don't know that for a fact. Some were part of an organized campaign. Some were put together by a gentleman who was seeking to get elected to the board and ended up did getting elected to the board, so he used this as a vehicle to advance his political ambitions. Our tally, nine parents, five students. That's it. That's really not very impressive when you're going to weigh that against a teacher's First Amendment rights, about speech that is not at work, not about work, not even made during the school year. She was on the beach in Florida. You know, and then if you actually read her posts, they are nothing like what they presented here. That's another factual dispute. Of those nine parents, four were supportive. Four were critical. One was a comment. Yeah, this is definitely in your briefs.  We'll call it at that. We'll take the appeal under advisement with thanks to both counsel. Very good. Thank you.